IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  08-CR-58-HDC |
| | ) |
| YIXEN CHEN, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION**

Before the Court is the government's Motion For Revocation of Release Order entered by Magistrate Judge McCarthy on May 16, 2008, filed pursuant to 18 U.S.C. § 3145(a)(1). [Dkt. #46]. Government seeks the detention of defendant Yixen Chen pending trial by asserting that he is a flight risk and a serious danger to the safety of the community. On March 6, 2008, defendant Chen and his three co-defendants were named in a one count Indictment charging a violation of 18 U.S.C. §1029(a)(2) – Access Device Fraud, accusing the defendants of the use of a fraudulent Visa credit card to obtain items of more than $1,000 in value from a Best Buy Store. The four defendants were also charged with aiding and abetting the §1029(a)(2) offense, in violation of 18 U.S.C. §2(a). A Superseding Indictment was filed on April 8, 2008, adding a second §1029 offense against defendant Chen accusing him of the use of a fraudulent Mastercard to obtain cash in excess of $1,000 from the Cherokee Nation Casinos.

At their respective arraignment hearings, defendant Chen's three co-defendants each waived a detention hearing and consented to the Order of Detention. Government requested detention of defendant Chen, and upon his objection, the matter was set for evidentiary hearing before the Magistrate. The probation office recommended detention in its Amended Pretrial Services Report,

which was submitted to the Magistrate at the detention hearing. A Chinese translator was provided to defendant Chen during the hearing.

The Court has reviewed the pleadings filed by the parties, the Amended Pretrial Services Report and the transcript of the evidentiary hearing before the Magistrate which the Court considers in conducting a *de novo* review of the Magistrate's denial of government's request for detention.

Findings of Fact

The Court finds that the facts and circumstances surrounding defendant Chen's arrest were not in dispute for purposes of the detention hearing, and they are as follows:

1.   The circumstances of the arrest were presented by Secret Service Agent Lantz Stuart who testified from his review of the records generated by several investigative agencies. On January 16, 2008, between approximately 7:30 p.m. and 8:30 p.m. four Asian males, including defendant Chen, went into the Best Buy Store located at 5520 East Skelly Drive in Tulsa. They purchased a laptop computer for $1,085.16 using what was later determined to be a counterfeit Visa credit card and counterfeit identification cards. After completing the laptop purchase three of the males, including defendant Chen, went to the front of the store acting as lookouts, monitoring the sales clerks. The fourth Asian male remained at the register attempting to purchase multiple Best Buy gift cards, with the use of a counterfeit Visa credit card.

2.   The cashier needed approval from the store manager to complete the gift card purchases. When the manager approached the register, the three Asians who were acting as lookouts, exited the store and drove off in a silver GMC Yukon. Tulsa Police Officers were summoned. A customer in the parking lot was able to provide the responding officers with the license plate number of the GMC Yukon. The officers quickly initiated a traffic stop of the vehicle.

Agent Stuart identified defendant Chen in the courtroom from the mug shot contained in the arrest report as one of the occupants of the GMC Yukon.

3. Meanwhile, the store manager had contacted the credit card company and was advised that the credit card was fictitious. The information on the back of the card on the magnetic strip was the correct information for the genuine account holder, but the information on the front of the credit card was fraudulent. While the manager was on the telephone with the credit card company, the remaining Asian male became anxious and abruptly left the Best Buy Store.

4. An off-duty police officer who was in line at the same register observed what was transpiring and gave chase to the fleeing Asian. That officer eventually apprehended him and he was arrested.

5. From a search of the GMC Yukon incident to the arrest and the surrounding area, the officers discovered approximately $20,000 in merchandise, counterfeit credit cards, genuine credit cards, maps of the State of Oklahoma with locations of gambling casinos circled, a computer printout listing casinos and their street addresses, and a room key to a local Ramada Inn.

6. Investigators viewed video tapes at three Cherokee Nation Casinos, located in Catoosa, Will Rogers Downs, and Siloam Springs. They observed defendant Chen and his co-defendants using false identification cards and counterfeit credit cards to obtain cash through ATM machines and casino cashiers. The estimated loss to the casinos was approximately $70,000. At the casinos, Chen used the fictitious name Suki Ham on his identification and counterfeit credit card.

7. The four Asians were identified as registered in a local Ramada Inn. A search warrant was issued and the defendants' luggage searched. In the defendants combined luggage, the officers discovered substantial sums of cash and approximately 10 to 12 fraudulent credit cards.

They also discovered a document that gave the true identified of the defendant as Yixin Chen.

  8. Agent Stuart testified that he was aware of other criminal conduct outside the state of Oklahoma with Asian males using false identification and counterfeit credit cards.

  9. After defendant Chen was advised of his Miranda rights in Chinese, he told officers he came to the United States illegally in 1997 from China, that he currently resides in Flushing, New York, and that he has been employed by several restaurants in New York since arriving in this country. Chen also stated that he met his co-defendants while working at a restaurant in New York and they invited him to travel and meet them in Oklahoma City to consider purchasing a Chinese restaurant in Tulsa.

  10. The Pretrial Service Report contains significant contradictions to Chen's statement. Specifically, Chen's wife Jian Fang Lin identified Jian Ping Lin and Jiang Youn Lin, two co-defendants herein, as Chen's cousins. Further, although Chen claimed he worked for the past ten years in several Chinese restaurants in New York, the probation officer was not able to verify Chen's prior employment except from his brother-in-law who apparently did not indicate when he employed Chen as a sushi chef nor for how long. The probation officer also reported that Chen had resided in Flushing, New York for three years, with no indication of his prior residency. The report also indicates that Chen is unemployed.

  11. The Pretrial Services Report shows that defendant Chen met his wife in 2002, married her in 2004, and that they have a two year old daughter. Chen's wife is employed as a waitress, earning $2,500 per month. His wife reports that Chen lived in Virginia for approximately one year in 2000. Although Chen contends that he currently resides in Flushing, New York, his drivers license shows his residence to be in Springfield, Virginia. Chen obtained his Virginia

license in 2007.

12.     Chen has financial assets of $10,000 in cash and bank accounts, an estimated $10,000 in personal property and no financial liabilities. Chen has no previously known criminal convictions nor any known history of drug and alcohol abuse.

13.     Chen, who is thirty years old, was born in Fujiam, China. His parents and a sister continue to live in China.

14.     The total loss suffered by the credit card companies and the Cherokee Casino was $93,000, with an intended loss of approximately $150,000.

15.     The Court is further advised that Chen's brother-in-law, who resides in the New York City area indicates his willingness to financially assist Chen if he were released on bond in this judicial district, or employ him if he were allowed to return to New York City.

16.     A detainer has been filed against defendant Chen by the Department of Homeland Security's Immigration and Customs Enforcement (ICE), requesting that if Chen is released from federal custody he be given to ICE custody to initiate deportation proceedings.

17.     The Scheduling Order in this case shows that the motion deadline has passed, with no motions having been filed by the defendants. This case is set for pretrial conference on June 16, 2008 and for jury trial on June 23, 2008.

18.     The maximum sentence that defendant Chen is facing if convicted on both counts of the Superseding Indictment is a term of imprisonment not to exceed ten years, and a $250,000 fine, per count, and not more than 5 years supervised release, or a maximum combined term of imprisonment not to exceed 20 years and a fine not to exceed $500,000.

Summary of Magistrate's Release Order

Following the evidentiary hearing, the Magistrate ordered defendant Chen's release in this forum on an unsecured $50,000 bond, with electronic monitoring, the standard conditions of release, and restricting travel to the Eastern and Southern Districts of New York and Northern District to Oklahoma.

Discussion

The Court finds that this is not a presumption case under 18 U.S.C. §3142(f)(1) because this case does not involve a crime of violence, or an offense in which the maximum term of imprisonment of 10 years or more is prescribed per count, or a felony involving a minor victim. Under the Bail Reform Act, Chen may be detained pending trial only upon the Court's finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). The government bears the burden of proof as to the issue of flight risk by a preponderance of the evidence and it must prove dangerousness to any other person or the community by clear and convincing evidence. See, *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). Based on the following statement of reasons, the Court finds that the government has met its respective burdens of proof. Specifically, the Court finds that government established that defendant Chen poses a serious risk of flight by a preponderance of the evidence and that he is a danger to the community by clear and convincing evidence.

Further, the Court finds the government has established that the defendant's detention is required under the factors listed in §3142(g). Pursuant to § 3142(g), "[i]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required

and the safety of any other person and the community," the court must consider the following factors:

    (1)    The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    The weight of the evidence against the person;

    (3)    The history and characteristics of the person, including -

        (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

        (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4)    The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g).

## Statement of Reasons

Regarding the weight of the evidence against defendant Chen, the grand jury has found probable cause to support issuance of the Superseding Indictment. Further, the investigative reports establish that at the time of his arrest, defendant Chen was present in the GMC Yukon identified as the vehicle leaving the Best Buy Store containing the subject laptop computer and counterfeit credit cards. Chen was also identified on a video tape as one of the persons present at the Cherokee Nation Casinos obtaining cash using counterfeit credit cards and false identification.

Regarding the history and characteristics of defendant Chen, first there is conflicting evidence regarding Chen's residency. Chen's wife's statement that he resides in Flushing, New

York is contradicted by Chen's drivers license which shows his residence in Springfield, Virginia as recently as 2007. There is also evidence that Chen resided in Virginia in 2000. The Court finds that the conflict between Chen's statement that he resides in Flushing, New York when he has a 2007 Virginia drivers license belies his residence claim. Further, the conflicting evidence of Chen's residency does not support a finding that Chen has close family ties to the Eastern and Southern District of New York, as found by the Magistrate. Chen did not present any evidence at the hearing to explain the discrepancy in his purported long term residency in New York City, and a 2007 drivers license in his true name with photo identity issued out of Springfield, Virginia.

The only credible evidence of Chen's employment history is from his brother-in-law who stated he had recently employed him as a sushi chef in the New York area. The Pretrial Services Report indicates that Chen is unemployed. The probation officer was unable to verify Chen's previous employers either due to language barriers or inability to locate the restaurants where Chen was previously purportedly employed.

Third, the evidence is that Chen has $10,000 in cash and bank accounts. This liquidity affords Chen the resources to abscond to China where he is a citizen, and does have close family ties, including his parents and a sister. The outstanding immigration detainer filed against Chen and the prospect of his deportation is a secondary factor which supports the Court's finding that Chen is a serious flight risk. Chen has no family ties, community ties nor assets in the Northern District of Oklahoma. Under Oklahoma law, as an illegal alien Chen would be unable to obtain even temporary employment in the state of Oklahoma pending trial.

Chen's character and veracity are also at issue. Chen told investigating officers that the purpose of his three day trip to Oklahoma was to purchase a Chinese Restaurant with the three co-

defendants that he purportedly met working at a restaurant in New York. Chen's wife states that two of the co-defendants in this case are Chen's cousins. Based on the wife's statement that two co-defendants are related to Chen, there is a lack of evidence that "family ties" would ensure Chen's appearance at further court proceedings. The family connection in this case appears to be tied to criminal conduct.

The lack of any credible evidence offered of family ties, community ties and employment, in conjunction with a showing of lack of character, an outstanding immigration detainer, use of false identity and counterfeit credit cards, financial resources to abscond, and the potential for a term of imprisonment, supports the Court's finding that defendant Chen poses a substantial risk of flight.

The pretrial conference in this case is set in approximately seventeen days for June 16, 2008 with a trial date, the following week on June 23. This short time frame results in Chen's continued pretrial detention for approximately three weeks. Courts have held that if government meets its burden of establishing flight risk, it may detain a person suspected of committing a crime based on its "substantial interest in ensuring that persons accused of crimes are available for trial and, ultimately, for service of their sentences, or that confinement of such persons pending trial is a legitimate means of furthering that interest." *United States v. Gonzales*, 149 F.3d 1192 (19th Cir. 1998), citing *Bell v. Wolfish*, 441 U.S. 520, 534 (1979).

As a practical matter, although not determinative, it is imperative that Chen have access to his attorney for consultation and trial preparation. During this interim time prior to trial, Chen needs to be located in Oklahoma, not in New York, to be available to assist his attorney. For Chen to be relocating to New York during the very short time remaining between now, pretrial and trial would not be practical. By necessity he would need to remain in Oklahoma rather than New York. If Chen

traveled to New York it is doubtful that the probation office could get electronic monitoring arrangements in place before he would need to be back in Oklahoma. In this regard, the Magistrate's order for electronic monitoring is functionally impractical. The Magistrate found that Chen had family ties in New York and based electronic monitoring on that finding. In that this Court finds that there are no family ties, community ties or availability of employment in Oklahoma, release with electronic monitoring out of New York State is impractical, inefficient and probably impossible to implement or effectively monitor giving the fact that there in slightly more than three weeks before trial and less for pretrial. As shown by the transcript of the detention hearing, there are serious communication obstacles in effectively and efficiently translating English to Chinese which is a significant factor in the time needed for Chen's attorney to properly prepare for trial.

In addition, the Court finds that government has met its burden by clear and convincing evidence that defendant Chen poses a serious danger to the community if released. The evidence established that Chen has the ability to obtain and use false identities and counterfeit credit cards. In three days of unrestrained criminal activity, defendant Chen and his co-defendants are charged with causing over $90,000 in loss to commercial enterprises, with the anticipated loss of $150,000. Moreover, government proffered evidence of similar criminal conduct involving Asian males in other parts of the United States. Defendant's potential to become a fugitive by access to and use of other forms of false identification and counterfeit credit cards is a factor which the Court finds weighs heavy against Chen's release pending trial.

The charge in this case is fraud, involving stolen identities of genuine credit card holders and substantial financial loss to commercial establishments. Although not a crime of violence or a drug offense, the nature and seriousness of this offense is shown by this defendant's persistent

deceitful dealings in this community and against other persons. No evidence was offered that Chen would not engage in this same fraudulent conduct if released, given the fact that government proffered evidence of means and availability.

Thus, the Court finds that no condition or combination of conditions will reasonably assure defendant Chen's appearance as required and the safety of any other persons and the community. Accordingly, the government's Motion for Revocation of Release is hereby GRANTED and the defendant is ordered to be DETAINED pending trial.

IT IS SO ORDERED this 30th day of May, 2008.

_____
HONORABLE H. DALE COOK
Senior United States District Judge